ERNEST F. BARTER, JR., ERNEST F. BARTER, JR., AND JO ANN BARTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barter v. Commissioner
Docket Nos. 12491-89, 12492-89
United States Tax Court
T.C. Memo 1991-124; 1991 Tax Ct. Memo LEXIS 142; 61 T.C.M. (CCH) 2198; T.C.M. (RIA) 91124; March 20, 1991, Filed *142 Decisions will be entered under Rule 155. Ernest F. Barter, Jr., for the petitioners. Debra Moe, for the respondent. FAY, Judge. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax as follows: Docket No. 12491-89
Year
Deficiency
1982
$ 16,277.50
1983
13,761.50
Docket No. 12492-89
1984
$ 12,104.00
After concessions, the issue remaining for decision is: Whether petitioners are allowed to deduct, as ordinary and necessary business expenses, certain expenditures made in connection with their "ranch" property. FINDINGS OF FACT Some facts have been stipulated and are so found. [1] The stipulation of facts and related exhibits are incorporated by reference. *143 Ernest F. Barter resided in Saratoga, California, when he filed the petition in Docket No. 12491-89. Ernest F. Barter and Jo Ann Barter resided in Saratoga, California, when they filed the petition in Docket No. 12492-89. [2] Ernest F. Barter and Jo Ann Barter (Jo Ann) are husband and wife. All references to petitioner are to Ernest F. Barter. In 1975 petitioner purchased approximately 320 acres of unimproved land (the property) in Northern California. The property is located approximately four miles from Tennant, California, where, at the time of purchase, petitioner's parents resided. Petitioner's mother still resides in Tennant. Petitioner's father died in January of 1990. At the time of the purchase, petitioner was married to Consuelo Barter (hereafter Connie). At the time of purchase, petitioner intended using the property as a retirement home. In 1977 petitioner and Connie purchased a mobile home which *144 was used as a residence on the property through 1980. From 1977 through 1980, petitioner and Connie were engaged in a cattle breeding enterprise. When the enterprise began, Connie was familiar with cattle breeding; petitioner was not. The cattle breeding enterprise generated a loss in both 1979 and 1980. In 1980 petitioner and Connie began divorce proceedings. Pursuant to the terms of the divorce settlement, all the cattle involved in the cattle breeding enterprise were awarded to Connie and removed from the property. [3] Petitioner did not resume cattle breeding nor did he purchase any new cattle after Connie left and the cattle were removed. Petitioner had none of his own cattle on the property during the years at issue, except possibly for the first two months of 1982. Petitioner purchased a 1980 Cessna 185 aircraft *145 (the Cessna) in early 1980. The Cessna was used during the years at issue to travel to and from the property. Petitioner would land the plane on a runway he built and maintains on the property and would store the plane in a hanger he built on the property. Petitioner deducted depreciation and other expenses related to the plane on his Schedule C in the years at issue. Besides the runway and hanger, the property also contains a 3,000 square foot residence built by petitioner. It has no water, sewer, or electric service connected. The residence also lacks a finished interior. The residence has a wrap-around deck and a Jacuzzi tub. Petitioner never lived in the residence. Instead, he continued to use the mobile home. Petitioner maintains a system of roads and fences on the property. During the years at issue, petitioner allowed a local rancher, Larry Criss (Criss) to graze 50 head of cattle on the property. In 1981 and 1982 Criss agreed to repair petitioner's fences on petitioner's property in exchange for grazing rights. In 1983 and 1984 Criss decided fence repair was too time-consuming; instead, he agreed to pay petitioner $ 875.00 per year for grazing rights. Petitioner *146 had no other source of income from cattle grazing in the years at issue. Petitioner relied on Criss and the United States Forest Service to determine the maximum head of cattle he could graze on the property. Petitioner knew from the beginning he would never make a profit from cattle grazing. During 1982 petitioner spent approximately 71 days on the property. He made ten trips with the Cessna and five trips by car. During 1983 petitioner spent approximately 35 days on the property. During 1984 petitioner spent approximately 50 days on the property. When petitioner was visiting the property, he would visit with his parents regularly. He had dinner with his parents every night and often stopped there on the way to the property whenever he drove instead of flew. Petitioner's father acted as a part-time caretaker of the property. His duties included fence construction, trash removal, vehicle maintenance and pest control. In addition, petitioner's father was a "presence" on the property to ward off vandals. Petitioner kept no separate books and records for the ranch activity. He merely made notations of ranch expenditures in his personal checkbook. Petitioner was a TWA pilot *147 during the years at issue. Petitioner had wages of over $ 90,000 in 1982, $ 100,000 in 1983 and combined wages of over $ 130,000 in 1984. The property which cost $ 77,000 when purchased and has approximately $ 200,000 of improvements was, at the time of trial, on the market for $ 530,000. OPINION The issue for decision is whether petitioners can deduct, as ordinary and necessary business expenses, certain expenditures made in connection with their ranch property. Section 183(a) disallows all deductions attributable to activities "not engaged in for profit" except as provided in section 183. Section 183(b)(1) then allows those deductions otherwise allowable regardless of profit objective, e.g., certain interest expenses and state and local taxes. Finally, section 183(b)(2) allows those deductions which would have been allowable had the activity been engaged in for profit but only to the extent gross income for the activity exceeds the deductions allowable under section 183(b)(1). Petitioner argues he was in the ranching/timber business during the years at issue, and he intended on making a profit in those years. Respondent argues petitioner's ranch activity was not "engaged *148 in for profit" and, therefore, deductions attributable to the activity claimed by petitioner for the years at issue must be disallowed. Section 183(c) defines an activity which is "not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The application of section 183 turns on whether petitioner had an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Petitioner's expectation of profit does not have to be reasonable, but petitioner's profit objective must be bona fide. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra at 642. Petitioner bears the burden of proof. Welch v. Helvering, 290 U.S. 111, 54 S. Ct. 8, 78 L. Ed. 212 (1933); Rule 142(a). Whether petitioner *149 had the requisite profit objective is a question of fact resolved on the basis of the existing circumstances. Dreicer v. Commissioner, supra at 645. The regulations under section 183 provide a nonexhaustive list of factors to be considered in determining whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. No single factor is controlling; rather, it is the facts and circumstances of the case which is determinative. Sec. 1.183-2(b), Income Tax Regs.Abramson v. Commissioner, 86 T.C. 360, 371 (1986). *150 We find petitioner's ranching activity was not engaged in for profit. One indication of petitioner's lack of a bona fide profit objective is his casual record keeping. Petitioner did not keep a separate account for his ranch activities. Petitioner merely made notations in his personal checkbook to indicate ranch expenses. A failure to keep books and records may indicate the activity was not engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs.
A second factor to consider is petitioner's lack of expertise in the field. Petitioner did consult with the National Forest Service but the consultation did not impart enough knowledge to petitioner so he could make a profit. A third factor to consider is the expectation the assets may appreciate in value. Sec. 1.183-(b)(4), Income Tax Regs. It is clear the property has appreciated in value. It is equally clear petitioner expected the property to appreciate in value as he added more improvements. However, the improvements he added are properly identified as personal and, therefore, do little to help petitioner's case. Lack of success of a taxpayer in carrying on other similar activities may indicate an activity was not engaged *151 in for profit. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner and Connie did not make a profit from their cattle breeding activity, petitioner's only other similar activity. This activity ceased when Connie removed the cattle. A record of substantial losses over many years and the unlikelihood of achieving a profit are also important factors. Engdahl v. Commissioner, supra at 660. The record clearly indicates petitioner has had a loss in the years at issue as well as the years just prior to and immediately following the years at issue. Petitioner admits the likelihood of achieving a profit using the land as it was used during the years at issue was nonexistent. We also note petitioner had substantial income from his employment as a commercial pilot which allowed him to absorb the losses from the ranch activity. Substantial income from sources other than the activity may indicate the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs.
Finally, the existence of personal pleasure may also indicate an activity is not engaged in for profit. Sec 1.183-2(b)(9), Income Tax Regs. While we agree with petitioner fixing fences *152 and dragging roads is not in and of itself pleasurable, petitioner did glean some pleasure from the ranch. Petitioner enjoyed visiting with his parents who lived close by. Petitioner received at least some enjoyment from flying a small plane as compared to a commercial airliner, and petitioner received the personal gain of building and maintaining what was to be his retirement home. Petitioner presented some evidence of an intent to increase the amount of farming as opposed to ranching done on the property. While it is clear petitioner did investigate this possibility, he never took any significant steps to implement the switch to farming; therefore, it is of little value to petitioner's case in the years at issue. In conclusion, it is the Court's distinct impression that petitioner's reason for maintaining the property and visiting it was personal in nature. Therefore, we find petitioner did not have the requisite profit objective in his ranch activity, and the deductions are limited by section 183. In order to reflect concessions concerning ITC recapture and deductions otherwise allowable, Decisions will be entered under Rule 155. Footnotes
1. The loss from ranching stipulated to in paragraph 36 of the Stipulation of Facts does not agree with the supporting document admitted as Joint Exhibit 4-D. The discrepancy is neither explained nor important to the outcome of the cases.↩
2. For convenience and economy, these cases have been consolidated for trial, briefing, and opinion.↩
3. The record is not clear as to when the cattle were actually removed. The divorce was final on February 19, 1982; therefore, we find the cattle were removed at some time prior to this date.↩